**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| VERENGO, INC.,[1] | Case No. 16-12098 (BLS) |
| Reorganized Debtor. | |
| WAYNE P. WEITZ, as Distribution Trustee of the Verengo, Inc. Distribution Trust, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 17-5_____ (BLS) |
| RANDY BISHOP, | |
| Defendant. | |

**COMPLAINT**

Wayne P. Weitz, as Distribution Trustee of the Verengo, Inc. Distribution Trust (the

"**Trustee**" or "**Plaintiff**"), by and through his undersigned counsel, for its complaint (the

"**Complaint**") against Randy Bishop (the "**Defendant**") states as follows:

**NATURE OF ACTION**

1.      This is an action pursuant to sections 544, 548, and 550 of title 11 of the

United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**") to

recover the Avoidable Transfers (as defined below) made to Defendant, Verengo, Inc.'s

(the "**Debtor**", and together with Defendant, the "**Parties**") former founder and CEO, as

voidable fraudulent transfers.  Defendant's employment with the Debtor purportedly

ended on March 25, 2015, pursuant to that certain *Separation and Release Agreement*

dated April 1, 2015 (the "**Original Separation Agreement**"), later purportedly

---

[1]      The Debtor and the last four digits of its identification number are as follows: Verengo, Inc.
[6114].  The address of the Debtor's corporate headquarters is 1899 Western Way, Suite 340, Torrance, CA
90501.

superseded by that certain *Amended and Restated Separation and Release Agreement* dated December 3, 2015 (the "**Amended Separation Agreement**", and together with Original Separation Agreement, the "**Separation Agreements**").

## JURISDICTION AND VENUE

2.      This court has subject matter jurisdiction over this adversary proceeding, which arises under title 11, arises in, and relates to the case under title 11, in the United States Bankruptcy Court for the District of Delaware (the "**Court**"), captioned *In re Verengo, Inc.*, Case No. 16-12098 (BLS), pursuant to 28 U.S.C. §§ 157 and 1334(b).

3.      The statutory and legal predicates for the relief sought herein are sections 544, 548, 550, and 502 of the Bankruptcy Code and Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

4.      This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter final orders for matters contained herein.

5.      Venue is proper in the District of Delaware pursuant to 28 U.S.C. § 1409.

6.      Pursuant to Rule 7008-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware, Plaintiff states that he does consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PROCEDURAL BACKGROUND

7.      On September 23, 2016 (the "**Petition Date**"), the Debtor commenced a case by filing a voluntary petition for relief in this Court under chapter 11 of the

Bankruptcy Code.

8.      On March 29, 2017, the Debtor filed its *Second Amended Combined Disclosure Statement and Chapter 11 Plan of Reorganization for Verengo, Inc.* [D.I. 236] (the "**Plan**").

9.      On April 13, 2017, the Debtor filed its *Notice of Filing of Plan Supplement* for the Plan [D.I. 262] (the "**Plan Supplement**").  Attached as Exhibit C to the Plan Supplement is a schedule of "Distribution Trust Avoidance Actions" [D.I. 262-3] (the "**Avoidance Action Schedule**"), which identifies a list of parties against whom the Debtor maintains potential Avoidance Action claims.  Defendant is specifically identified on the Avoidance Action Schedule "for claims and causes of action that include, but are not limited to, fraudulent transfer actions under federal and applicable state laws, in connection with certain debt forgiveness, payments, and other such benefits provided under a settlement agreement entered into between Bishop and the Debtor."

10.      On April 24, 2017, this Court entered an order confirming the Plan [D.I. 281] ("**Confirmation Order**").

11.      The effective date of the Plan (the "**Effective Date**") occurred on May 15, 2017 [D.I. 304].  In accordance with the Plan and Confirmation Order, the Verengo, Inc. Distribution Trust (the "**Trust**") was established on the Effective Date of the Plan, and the Debtor and the Trustee entered into that certain Distribution Trust Agreement.

12.      Pursuant to Section I.B. of the Plan, Crius Prepetition Secured Claims, Crius Unsecured Deficiency Claims, and General Unsecured Claims are impaired classes of creditors and are not expected to be paid in full.

## **GENERAL BACKGROUND**

13.     In February 2008, Defendant and Ken Button ("**Button**") purchased Gemstar Builders, which was subsequently renamed Verengo Solar, a d/b/a of Verengo, Inc.  A privately-held corporation organized under Delaware law, headquartered in Torrance, CA, the Debtor's business focuses on the installation of solar photovoltaic systems.

14.     As further detailed in the *Declaration of Dan Squiller in Support of the Debtor's Chapter 11 Petition and Request for First Day* Relief [D.I. 2; 9/23/2016] (the "**Squiller Declaration**"), in 2013, the Debtor began to experience quality problems with its installations in the eastern part of the US. Eventually, the Debtor was suspended by the New York State Energy Research and Development Authority (NYSERDA), which prevented the Debtor from activating many of its installed systems until they were reinstalled. This resulted in additional costs to the Debtor and reduced cash flow. In January 2015, all northeast operations were sold to NRG Energy, Inc.; contemporaneously, Northern and Central California operations were shut down.  In addition, between 2012 and 2016 sales and marketing expenses for the origination part of the business were excessive and weighed on the Debtor's cash flow and liquidity, notwithstanding a reduction in force during that time that eliminated more than 90% of the Debtor's employees.

15.     In light of the foregoing, together with the Debtor's failed capital raises and an unsuccessful prepetition marketing process, the Debtor ultimately was forced to initiate the instant bankruptcy case in September 2016.  As documented in the schedules

filed by the Debtor [D.I. 99], as of the Petition Date, the Debtor's liabilities far exceeded its non-NOL-based assets.

16.     Contemporaneous with this financial distress, the Debtor and Defendant entered into a series of agreements.   The first such agreement is that certain Early Exercise Stock Purchase Agreement dated December 20, 2011 (the "**SPA**"), pursuant to which Defendant exercised a Stock Option (the "**Option Agreement**") dated July 31, 2009, to purchase 2,526,181 shares of the Debtor's common stock; in connection with the exercise of the option under the Option Agreement, Defendant borrowed funds from the Debtor pursuant to that certain Unsecured Promissory Note dated December 20, 2011 in the original principal amount of $41,682 (the "**Option Note**", a copy of which is attached hereto as **Exhibit A**), due on December 20, 2019.  Subsequently, the Parties entered into that certain Employment Agreement dated January 1, 2013 (the "**Employment Agreement**"), as amended September 12, 2014 (the "**Amendment to "Employment Agreement**", a copy of which is attached hereto as **Exhibit B**).[2]

17.     On September 12, 2014, Defendant borrowed funds from the Debtor pursuant to that certain Non-recourse Secured Promissory Note dated September 12, 2014 in the original principal amount of $500,000 (the "**Secured Note**", a copy of which is attached hereto as **Exhibit C**, and together with the Option Note, the "**Notes**").[3]  To secure the Secured Note, the Parties entered into that certain Stock Pledge Agreement dated as of September 12, 2014 (the "**Pledge Agreement**"), by which Defendant pledged all of his 2,526,181 Common Shares as collateral for Secured Note.  Pursuant to the Secured Note, the entire amount of accrued but unpaid interest and all outstanding

---

[2]     The Amendment to Employment Agreement was signed by Button, the subject of a substantially similar complaint.  Conversely, Bishop signed an identical document in favor of Button.

[3]     Both Notes are governed by California law and provide for attorneys' fees.

principal thereon was due and payable upon the earlier to occur of (i) the close of business on September 12, 2019 or (ii) the termination of Defendant's employment with the Debtor, regardless of the reason for said termination.

18.    In late 2014, the Debtor's board of directors began discussing Defendant's and Button's transition out of the company, discussions which ultimately resulted in the Original Separation Agreement executed April 1, 2015, a copy of which is attached hereto as **Exhibit D**.  Per the terms of the Original Separation Agreement, the Parties agreed that the accrued but unpaid interest and all outstanding principal on the Notes was $548,244 (the "**Total Indebtedness**"). *See* Original Separation Agreement, 2(b).

19.    In accordance with the Original Separation Agreement, the Debtor agreed to transfer to and/or provide Defendant with, *inter alia*, the following:

a.    Defendant's final date of employment would be March 25, 2015 (the "**Separation Date**");

b.    Defendant would receive twelve monthly installment payments over a twelve month period, equal to Defendant's Salary plus a "Separation Bonus" (as defined in the Amendment to the Employment Agreement, and collectively with the installment payments, the "**Separation Payments**"). This provision essentially mirrored the terms of an analogous provision in the Amendment to Employment Agreement. *See* Amendment to Employment Agreement, ¶2.b.;

c.    Cancellation of the Notes and Pledge Agreement and release of 100% of the Pledged Stock (as defined in the Pledge Agreement, 2,526,181 shares of the Debtor's common stock) and all liens on the same, delivering a stock certificate representing the Pledged Stock retained by Defendant;

d.    Contingent monthly payments in the amount of $13,271 "for each of the twelve calendar months of 2015," subject to the occurrence of specified Debtor monthly milestones (the "**Contingent Payments**"), with a combined January and February 2015 Contingent Payment ($26,542) due upon expiration of the Original Separation Agreement's Revocation Period; and

e.    Reimbursement of legal expenses for up to $7,500 in connection with the preparation of the Original Separation Agreement.

20.     In exchange, Defendant purported to convey to the Debtor the following

non-exhaustive list:

    a.    A waiver of Defendant's right to the Separation Payments, a purported
       value of $398,125;

    b.    A waiver of Defendant's right to additional equity grants, for which the
       Debtor "shall forgive $45,000 of the Total Indebtedness";

    c.    Title and interest in 618,347 shares of the Debtor's common stock, which
       the Parties "agree[d] have a current fair market value of $0.17 per share or
       $105,119 in the aggregate";

    d.    Permanent resignation from the Board of Directors;

    e.    Facilitation of Ken Bishop's resignation "as [an observer]";

    f.    Covenants to cooperate and covenants not to solicit, disparage, disclose or
       sue; and

    g.    Release of claims against the Debtor which arose through April 1, 2015.

21.     The Parties further agreed that the Debtor "does not have a legal

obligation to pay the Separation Payments and Contingent Payments Described above but

that it chooses to do so in consideration for [Defendant's] service to the Company and

[Defendant's] promises in this Agreement." Original Separation Agreement, p. 3.

Defendant further acknowledged and represented that the Debtor had paid him "all

salary, wages, bonuses, earned unused paid time off, expense reimbursement and any and

all other benefits and compensation due to [Defendant] up to the Separation Date," except

for "the amounts payable under the [Original Separation Agreement]." *Id.* at ¶12(a). The

Original Separation Agreement is to be construed and enforced pursuant "to the laws of

California applicable to contracts to be performed wholly within the State." *Id.* at ¶17.

22.     On March 25, 2015, consistent with the Original Separation Agreement,

Defendant's employment ended (the "**Termination Date**"). As of the Termination Date,

Defendant's title was CEO, and for the avoidance of doubt, Defendant was an insider of the Debtor at all times pertinent to this Complaint.

23.      On April 24 and May 22, 2015, Defendant received three Contingent Payments totaling $53,084 (the **Post-Separation Transfers**).[4]  In light of the Debtor's further financial deterioration, no further Contingent Payments were made.

24.      The Original Settlement Agreement was later purportedly superseded by the Amended Separation Agreement, dated December 3, 2015, a copy of which is attached hereto as **Exhibit E**.  The Amended Separation Agreement, meant to be effective as of the original Separation Date (March 25, 2015), restructured the Original Settlement Agreement as follows:

   a.  The provision detailing Defendant's entitlement to the Separation Payments is removed;

   b.  The Parties agreed to enter into a new Non-Recourse Secured Promissory Note (the "**Amended Secured Note**", a copy of which is attached hereto as **Exhibit F**) and related Pledge Agreement (the "**Amended Pledge Agreement**", a copy of which is attached hereto as **Exhibit G**, and together with the Amended Separation Agreement and Amended Secured Note, the "**December 2015 Amendments**") to replace and amend the original Secured Note and Pledge Agreement.  The Amended Secured Note provides as follows:[5]

      i.   original principal amount of $548,244 (increased from $500,000);
      ii.  interest rate of 1.86% per annum (same);
      iii. due on March 24, 2023 (increased from September 19, 2019, and with no alternate "earlier of" clause relating to the date on which Defendant's employment terminates);
      iv.  no interim payments required;
      v.   secured solely with a security interest in 618,347 shares of the Debtor's common stock (a reduction from 2,526,181 shares);
      vi.  non-recourse to Defendant (same); and

---

[4]      The Post-Separation Transfers amount to (i) $26,542 on April 24, (ii) $13,271 on April 24; and (iii) $13,271 on May 22.
[5]      The parentheticals which follow compare the original Secured Note to the Amended Secured Note, where applicable.

vii. the sole and exclusive recourse for the Debtor shall be to the "Collateral" (same, aside from the differing size of said collateral).

c. Defendant again waives all right to further grants of equity, but the attribution of a $45,000 value to this waiver is removed;

d. Instead of cancelling both Notes, the Debtor only cancels the Option Note and related pledge agreement; and

e. The Debtor releases only 1,907,834 of the Pledged Stock, instead of the full 2,526,181 in the Pledge Agreement.

The remainder of the Original Settlement Agreement remains largely in place.  To the extent valid, the balance of the Amended Secured Note remains due and owing.

25.    Less than a year and a half after the Original Separation Agreement and barely nine months after the December 2015 Amendments, the Debtor initiated its voluntary case under chapter 11 of the Bankruptcy Code in this Court.

**CLAIMS FOR RELIEF**

**COUNT I**
**(Avoidance of Obligations Under the Secured Note, the Original Stock Pledge Agreement, and Amendment to Employment Agreement – 11 U.S.C. § 544)**

26.    Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

27.    The Debtor received less than reasonably equivalent value in exchange for the obligations it incurred on September 12, 2014 under the Secured Note, the Original Stock Pledge Agreement, and Amendment to Employment Agreement (the "**September 2014 Obligations**"), including, but not limited to, the loan proceeds advanced to Defendant.

28.    At the time the September 2014 Obligations were undertaken by the Debtor, the Debtor was a corporation, as that term is defined in section 101(9) of the Bankruptcy Code.

29.   At the time the September 2014 Obligations were undertaken by the Debtor, Defendant was an insider or non-statutory insider of the Debtor, within the meaning of section 101(31)(B).

30.   As described *supra*, the Debtor (i) engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction at issue here; (ii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due; and/or (iii) was insolvent at that time or became insolvent as a result of the September 2014 Obligations.

31.   Upon information and belief, at all times relevant to this Complaint, there were actual creditors of the Debtor with allowable unsecured claims who could avoid the September 2014 Obligations incurred by the Debtor to Defendant under applicable law.

32.   Accordingly, the September 2014 Obligations incurred by the Debtor to Defendant should be avoided and set aside under 11 U.S.C. § 544(b) and applicable state law.

## COUNT II
### (Avoidance of Original Separation Agreement Obligations – 11 U.S.C. § 548)

33.   Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

34.   At the time the Original Separation Agreement was executed on April 1, 2015, the Debtor was a corporation, as that term is defined in section 101(9) of the Bankruptcy Code.

35.   At the time the Original Separation Agreement was executed on April 1, 2015, Defendant was an insider or non-statutory insider of the Debtor, within the meaning of section 101(31)(B).

36.     The Original Separation Agreement constitutes an employment agreement because, *inter alia*, it relates to Defendant's employment with the Debtor and/or modified Defendant's existing employment relationship with the Debtor.

37.     The Debtor incurred the obligations under the Original Separation Agreement to Defendant within two years of the Petition Date. The Original Separation Agreement was executed on April 1, 2015 and became effective on April 8, 2015.

38.     The Debtor received less than reasonably equivalent value from Defendant in exchange for the Debtor's obligations to, *inter alia*, cancel the Notes, waive Defendant's obligation to pay the principal and accrued interest on the same, and make the Contingent Payments.  In exchange for these obligations, Defendant agreed to, *inter alia*, release all existing or future claims relating to Defendant's employment and termination.  On information and belief, the Debtor received no value for this promise because Defendant did not have any potential claims against the Debtor at the time.

39.     Defendant also agreed to a waiver of Defendant's right to the Separation Payments, a purported value of $398,125; a waiver of Defendant's right to additional equity grants, for which the Debtor "shall forgive $45,000 of the Total Indebtedness"; convey title and interest in 618,347 shares of the Debtor's common stock, which the Parties "agree[d] have a current fair market value of $0.17 per share or $105,119 in the aggregate"; permanent resignation from the Board of Directors; facilitation of Ken Bishop's resignation as an observer; covenants to cooperate and covenants not to solicit, disparage, disclose or sue; and release of claims against the Debtor which arose through April 1, 2015.  These actions do not equate to the value the Debtor conveyed to Defendant, and upon information and belief, Defendant had already agreed to take all of

those actions at the time he executed the Employment Agreement.  Indeed, the driving impetus behind the Original Separation Agreement appears to be consideration for services rendered.  Therefore, on information and belief, the Debtor received no value from Defendant in exchange for the Debtor's incurrence of the obligations to Defendant pursuant to the Original Separation Agreement.

40.      In sum, the Debtor's purported obligations to Defendant under the Original Separation Agreement are avoidable because: (i) the Debtor received less than reasonably equivalent value from Defendant; (ii) the purported obligations asserted by Defendant were for the benefit of such Defendant, who was an insider of the Debtor; (iii) the Original Separation Agreement is an employment contract; and (iv) the Original Separation Agreement was made outside of the ordinary course of business.

41.      In addition, and as described *supra,* the Debtor incurred the obligations to Defendant under the Original Separation Agreement at a time when the Debtor was insolvent, possessed an unreasonably small capital; and/or believed that the Debtor would incur debts beyond its ability to repay after the transaction.  As an insider of the Debtor, Defendant would have known this at the time he entered into the Original Separation Agreement.

42.      Accordingly, the Debtor's purported obligations to Defendant under the Original Separation Agreement should be avoided and set aside under 11 U.S.C. § 548.

**<u>COUNT III</u>**
**(Avoidance of Post-Separation Transfers – 11 U.S.C. § 548)**

43.      Plaintiff hereby incorporates all previous allegations as though fully set forth herein.

44.     The Debtor received less than reasonably equivalent value in exchange for the Post-Separation Transfers it made to Defendant on April 24, 2015 and May 22, 2015.

45.     The Debtor had a property interest in the funds transferred to Defendant by way of the Post-Separation Transfers.

46.     The Post-Separation Transfers are avoidable because: (i) the Debtor was insolvent on the date the Post-Separation Transfers were made or the time at which the obligations to make the Post-Separation Transfers occurred, or became insolvent as a result of the Post-Separation Transfers; (ii) the Debtor was engaged in business or transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; (iii) the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured; and (iv) the Debtor made the Post-Separation Transfers for the benefit of Defendant, who was an insider and/or non-statutory insider of the Debtor, under employment agreements and outside of the ordinary course of business.

47.     Accordingly, the Post-Separation Transfers should be avoided and set aside under 11 U.S.C. § 548.

## COUNT IV
### (Avoidance of Original Separation Agreement Obligations – 11 U.S.C. § 544)

48.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

49.     The Debtor received less than reasonably equivalent value in exchange for the Debtor's obligations to, *inter alia*, cancel the Notes, waive Defendant's obligation to pay the principal and accrued interest on the same, and make the Contingent Payments. In exchange for these obligations, Defendant agreed to, *inter alia*, release all existing or future claims relating to Defendant's employment and termination.  On information and

belief, the Debtor received no value for this promise because Defendant did not have potential claims against the Debtor at the time.

50.     Defendant also agreed to a waiver of Defendant's right to the Separation Payments, a purported value of $398,125; a waiver of Defendant's right to additional equity grants, for which the Debtor "shall forgive $45,000 of the Total Indebtedness"; convey title and interest in 618,347 shares of the Debtor's common stock, which the Parties "agree[d] have a current fair market value of $0.17 per share or $105,119 in the aggregate"; permanent resignation from the Board of Directors; facilitation of Ken Bishop's resignation as an observer; covenants to cooperate and covenants not to solicit, disparage, disclose or sue; and Release of claims against the Debtor which arose through April 1, 2015.   These actions do not equate to the value the Debtor conveyed upon Defendant, and upon information and belief, Defendant had already agreed to take all of those actions at the time he executed the Employment Agreement.   Indeed, the driving impetus behind the Original Separation Agreement appears to be compensation for services rendered.   Therefore, on information and belief, the Debtor received no value from Defendant in exchange for the Debtor's incurrence of the obligation to Defendant pursuant to the Original Separation Agreement.

51.     As described *supra*, the Debtor (i) engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction at issue here; (ii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due; and/or (iii) was insolvent at that time or became insolvent as a

result of the transfer.  As an insider of the Debtor, Defendant would have known this at the time he entered into the Original Separation Agreement.

52.     Upon information and belief, at all times relevant to this Complaint, there were actual creditors of the Debtor with allowable unsecured claims who could avoid the Original Separation Agreement incurred by the Debtor to Defendant under applicable law.

53.     Accordingly, the obligations incurred by the Debtor to Defendant under Original Separation Agreement should be avoided and set aside under 11 U.S.C. § 544 and applicable state law.

## COUNT V
### (Avoidance of Post-Separation Transfers – 11 U.S.C. § 544)

54.     Plaintiff repeats and realleges the allegations contained above in all prior paragraphs as though fully set forth at length herein.

55.     The Debtor received less than reasonably equivalent value in exchange for the Post-Separation Transfers it made to Defendant on April 24, 2015 and May 22, 2015.

56.     The Debtor made the Post-Separation Transfers to Defendant on account of an antecedent debt pursuant to the Original Separation Agreement, which was executed as of April 1, 2015, prior to the Post-Separation Transfers.

57.     The Debtor (i) was insolvent at the time the Post-Separation Transfers was made; (ii) engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction at issue here; and/or (iii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

Upon information and belief, by virtue of his senior position with the Debtor, including his role as CEO, Defendant had reasonable cause to know and believe the foregoing.

58.     Upon information and belief, at all times relevant to this Complaint, there were actual creditors of the Debtor with allowable unsecured claims who could avoid the Post-Separation Transfers under applicable state law.

59.     Accordingly, the Post-Separation Transfers should be avoided and set aside under 11 U.S.C. § 544 and applicable state law.

<u>**COUNT VI**</u>
**(Avoidance of December 2015 Amendments Obligations – 11 U.S.C. § 548)**

60.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

61.     At the time the Amended Separation Agreement, the Amended Secured Note, and the Amended Pledge Agreement (as previously defined, the December 2015 Amendments) were executed on December 3, 2015, the Debtor was a corporation, as that term is defined in section 101(9) of the Bankruptcy Code.

62.     At the time the December 2015 Amendments were executed on December 3, 2015, Defendant was an insider or non-statutory insider of the Debtor, within the meaning of section 101(31)(B).  Upon information and belief, Defendant still maintained, directly or indirectly, shares of the Debtor at the time of the December 2015 Amendments.  Additionally, (i) the December 2015 Amendments were expressly meant to retroactively apply to March 25, 2015, a timeframe in which Defendant was still the CEO of the Debtor; and (ii) the December 2015 Amendments were expressly intended to replace, amend, and/or supersede the Original Separation Agreement, Original Secured Note, and Original Pledge Agreement.

63.     The December 2015 Amendments constitute an employment agreement because, *inter alia*, it specifically and expressly relates to Defendant's employment with the Debtor and/or modified Defendant's employment relationship and/or the Original Separation Agreement with the Debtor, and was meant to apply retroactively to March 25, 2015.

64.     The Debtor incurred the obligations under the December 2015 Amendments to Defendant within two years of the Petition Date.

65.     The Debtor received less than reasonably equivalent value from Defendant in exchange for the Debtor's obligations to, *inter alia*, enter into the December 2015 Amendments, either (i) as a replacement or modification of the September 2014 Obligations and Original Separation Agreement (for the same reasons detailed in Counts I-V); or (ii) as a stand-alone transfer.

66.     The Debtor's purported obligations to Defendant under the December 2015 Amendments are thus avoidable because: (i) the Debtor received less than reasonably equivalent value from Defendant; (ii) the purported obligations asserted by Defendant were for the benefit of such Defendant, who was an insider or non-statutory insider of the Debtor; (iii) the December 2015 Amendments constitute an employment contract; and (iv) the December 2015 Amendments were made outside the ordinary course of business.

67.     Moreover, and as described *supra*, the Debtor incurred the obligations to Defendant under the December 2015 Amendments at a time when the Debtor was insolvent, possessed an unreasonably small capital; and/or believed that the Debtor would incur debts beyond its ability to repay after the transaction.

68.     Accordingly, the Debtor's purported obligations to Defendant under the December 2015 Amendments should be avoided and set aside under 11 U.S.C. § 548.

### COUNT VII
**(Avoidance of December 2015 Amendments Obligations – 11 U.S.C. § 544)**

69.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

70.     The Debtor received less than reasonably equivalent value in exchange for the Debtor's obligations incurred on December 3, 2015 under the December 2015 Amendments.

71.     As described *supra*, the Debtor incurred the obligations to Defendant under the December 2015 Amendments at a time when the Debtor was insolvent or became insolvent as a result of the same, possessed an unreasonably small capital; and/or believed that the Debtor would incur debts beyond its ability to repay after the transaction.  As an insider or non-statutory insider of the Debtor, Defendant would have known this at the time he entered into the December 2015 Amendments.

72.     Upon information and belief, at all times relevant to this Complaint, there were actual creditors of the Debtor with allowable unsecured claims who could avoid the December 2015 Amendments incurred by the Debtor to Defendant under applicable law.

73.     Accordingly, the obligations incurred by the Debtor to Defendant under the December 2015 Amendments should be avoided and set aside under 11 U.S.C. § 544(b) and applicable state law.

### COUNT VIII
**(Recovery of Property – 11 U.S.C. § 550)**

74.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

75.     Plaintiff is entitled to avoid all of the foregoing described transfers and obligations, including the September 2014 Obligations, the Original Separation Agreement obligations, the Post-Separation Transfers, and the December 2015 Amendments obligations, pursuant to 11 U.S.C. §§ 544 and 548 (collectively, the "**Avoidable Transfers**").

76.     Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

77.     Pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s) and/or any value conveyed to Defendant thereto, plus interest thereon to the date of payment and the costs of this action.

<u>**COUNT IX**</u>
**(Disallowance of all Claims – 11 U.S.C. § 502)**

78.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

79.     Defendant is a transferee of transfers avoidable under section 544 and/or 548, which property or value is recoverable under section 550 of the Bankruptcy Code.

80.     Defendant has not paid the amount or value of the Avoidable Transfer(s), or turned over such property or value, for which Defendant is liable under 11 U.S.C. § 550.

81.     Pursuant to 11 U.S.C. § 502(d), any and all Claims of Defendant and/or its assignee, against the Debtor's chapter 11 estate or Plaintiff must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s) or the value conveyed thereto, plus interest thereon and costs.

82.      Pursuant to 11 U.S.C. § 502(j), any and all Claims of Defendant, and/or its assignee, against the Debtor's chapter 11 estate or Plaintiff previously allowed by the Debtors or by Plaintiff, if any, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s) or the value conveyed thereto, plus interest thereon and costs.

## RESERVATION OF RIGHTS

Plaintiff reserves the right to bring all other claims or causes of action that Plaintiff might have against Defendant, on any and all grounds, as allowed under the law or in equity.

*[remainder of page intentionally left blank]*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant him the following relief against Defendant:

A. On Plaintiff's Counts I-VIII, judgment in favor of Plaintiff and against Defendant, avoiding all of the Avoidable Transfers and directing Defendant to return to Plaintiff the amount or value of the Avoidable Transfers, pursuant to 11 U.S.C. §§ 544, 548, and 550(a), plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

B. On Plaintiff's Count IX, judgment in favor of Plaintiff and against Defendant disallowing any claims held or filed by Defendant against Plaintiff until Defendant returns the amount or value of the Avoidable Transfers, to Plaintiff pursuant to 11 U.S.C. § 502(d) and (j); and

C. Granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated: August 23, 2017
   Wilmington, DE

         BAYARD, P.A.

         */s/ Evan T. Miller*
         Scott D. Cousins (No. 3079)
         Evan T. Miller (No. 5364)
         222 Delaware Ave., Suite 900
         Wilmington, DE 19801
         Tel: (302) 655-5000
         Fax: (302) 658-6395
         E-mail: scousins@bayardlaw.com
            emiller@bayardlaw.com

         *Attorneys for Wayne P. Weitz, as Distribution Trustee of the Verengo, Inc. Distribution Trust*