# Exhibit B

confidential
Michael Zabel
Verengo Solar

# AMENDMENT TO EMPLOYMENT AGREEMENT

This Amendment to Employment Agreement (this "Amendment") is entered into as of September 12, 2014, but effective as of the Series D-2 Closing Date (as defined herein), between Verengo, Inc., a Delaware corporation ("Company") and Randy Bishop ("Executive").

## R E C I T A L S

WHEREAS, Company and Executive have entered into that certain Employment Agreement dated as of January 1, 2013 (the "Agreement"); and

WHEREAS, Company and Executive desire to amend the Agreement in accordance with the terms of this Amendment.

NOW, THEREFORE, for good and valuable consideration, receipt of which is hereby acknowledged, and in consideration of the mutual promises and agreements hereinafter set forth, Executive and Company hereby agree to amend the Agreement as follows:

## A M E N D M E N T

1. <u>Definitions</u>.  Except as otherwise provided herein, capitalized terms used in this Amendment shall have the definitions set forth in the Agreement.

2. <u>Amendments</u>.  Effective as of the Series D-2 Closing Date, the Agreement is amended as follows:

    a. <u>Section 1 - Employment and Term</u>.  Section 1 is hereby amended to read in its entirety as follows:

    "1. <u>Employment and Term</u>.  Company hereby employs Executive and Executive hereby accepts employment upon the terms and conditions of this Agreement. Subject to Section 9 hereof, the term ("Term") of this Agreement shall commence as of the Series D-2 Closing Date and shall continue for a period of two years, provided, however, that the Term shall be automatically extended by two (2) year intervals thereafter unless, not later than ninety (90) days prior to each automatic renewal date, either party notifies the other in writing that it does not desire to extend the Term.  The first such 2-year extension (e.g. an extension to a date that is four (4) years from the Series D-2 Closing Date) shall be referred to herein as the "Second 2-Year Term"."

    b. <u>Section 9(f) – Effect of Termination</u>.  The last paragraph of Section 9(f) is hereby amended to read in its entirety as follows:

    "In addition to the amounts payable in Sections (i)-(ii) above, and notwithstanding anything to the contrary contained herein, if Executive's employment is terminated by Company without Cause or due to Executive's Disability, or if the Agreement is terminated by Executive for Good Reason, or if the Company elects not to renew Executive's services for a Second 2-Year Term (as provided for in Section 1 above) without Cause (where Cause, for the avoidance of doubt, requires satisfaction of Section 9(c) hereof) or due to Executive's Disability, and Executive

1

confidential
Michael Zabel
Verengo Solar

confidential
Michael Zabel
Verengo Solar

executes the Company's Separation Agreement and Release in a form similar to Attachment A to this Agreement, and does not revoke it, all occurring no later than forty-five (45) days following Executive's termination, then Company shall: (A) pay to Executive in cash a payment equal to (1) the Salary payable to Executive under this Agreement for a twelve (12) month period ("Separation Salary") plus (2) the Separation Bonus (as defined below), in each case less applicable state and federal withholdings and payable in equal installments on the Company's normal payroll dates during the twelve (12) month period immediately following such termination (commencing with the first payroll date that is more than forty-five (45) days following Executive's termination) (the foregoing collectively, the "Separation Payment"); and (B) if Executive properly and timely elects to continue medical coverage under the Company's then existing benefits plan in accordance with the continuation requirements of COBRA, Company shall reimburse Executive for the cost of the premium for such coverage, less $27.40 per calendar day (i.e., $10,000 per year), from the Separation Date through the twelve (12) month anniversary of the Separation Date (the foregoing (A) and (B) collectively, the "Separation Benefits"). The Separation Benefits described in this Paragraph, however, shall not apply, and Executive will not be eligible to receive any such separation-related benefits (x) if the Company is sold and the acquirer of the business offers employment that does not result in a material reduction of the Executive's compensation payable under this Agreement, nor a material reduction in the scope of the Executive's responsibilities nor require that the Executive move his office more than fifty (50) miles from its current location, or (y) if further extensions of the Agreement after the Second 2-Year Term are not requested by the Company.

Notwithstanding the foregoing, Borrower and the Company agree that the amount of any Gross Separation Payment (as defined below) payable to Executive shall be reduced, on a dollar for dollar basis, by the aggregate amount of Executive's indebtedness then outstanding (if any) under any loan or other extension of credit made at any time by Company to Executive (a "Company Loan") and the outstanding balance due under any such Company Loan shall be decreased by the same amount (if any) by which the Gross Separation Payment is so reduced.

For purposes hereof, the term "Separation Bonus" shall mean the greater of (1) the average annual Bonus paid for the two calendar years prior to the date of Executive's termination or (2) 25% of Executive's Salary for the calendar year prior to the date of Executive's termination.  For purposes hereof, the term "Gross Separation Payment" shall mean the gross amount of the Separation Payment to which Borrower is entitled, without reduction for any tax withholdings."

c. <u>New Section 11(k) – Option Award Terms</u>.  A new Section 11(k) is hereby

2

confidential
Michael Zabel
Verengo Solar

added after Section 11(j) of the Agreement which shall read in its entirety as follows:

> "11(k)  <u>Option Award Terms</u>.  Notwithstanding the terms of any option award or agreement to the contrary, Executive shall have three (3) years from the date of termination of Executive's employment (regardless of the reason for termination) to exercise any vested, unexercised stock options held by Executive on the date of termination of Executive's employment.  The foregoing post-termination exercise period shall be included in any future option awards granted to Executive."

       d.  <u>New Section 11(l) – New Option Grant</u>.  A new Section 11(l) is hereby added after Section 11(k) of the Agreement which shall read in its entirety as follows:

> "11(l)  <u>New Option Grant</u>.  At the first meeting of the Company's Board of Directors following the Series D-2 Closing Date, the Company will grant Executive an option to purchase a number of shares of the Company's common stock equal to .4% of the Company's then fully diluted capitalization at a price per share equal to the fair market value per share of the Common Stock on the date of grant, as determined by the Company's Board of Directors.  The option grant shall be subject to the terms and conditions of the Company's Stock Option Plan and Stock Option Agreement, including four year vesting requirements; provided, however, that the grant will have 100% acceleration of vesting upon a change of control of the Company."

       3.  <u>Effective Date</u>.  This Amendment shall be effective upon the "Initial Closing" of the sale of Series D-2 Preferred Stock by the Company (the "<u>Series D-2 Closing Date</u>") pursuant to that certain Series D-2 Preferred Stock Purchase Agreement dated on or about the date hereof, by and among the Company and the Purchasers set forth on Exhibit A thereto.

       4.  <u>Miscellaneous</u>.  Except as expressly modified hereby, all terms, conditions and provisions of the Agreement shall continue in full force and effect.  In the event of any inconsistency or conflict between the Agreement and this Amendment, the terms, conditions and provisions of this Amendment shall govern and control.  This Amendment and the Agreement constitute the entire and exclusive agreement between the parties with respect to this subject matter.  All previous discussions and agreements with respect to this subject matter are superseded by the Agreement and this Amendment.

confidential
Michael Zabel
Verengo Solar

confidential
Michael Zabel
Verengo Solar

IN WITNESS WHEREOF, the parties hereto executed this Amendment to Employment Agreement as of the date first written above.

VERENGO, INC.                                    RANDY BISHOP

By: _____                      _____

Name: Ken Button

Title: President

confidential
Michael Zabel
Verengo Solar