# Exhibit G

## STOCK PLEDGE AGREEMENT

THIS STOCK PLEDGE AGREEMENT (the "Agreement") is entered into as of March 25, 2015, by and between Verengo, Inc. a Delaware corporation (the "Company") and Randy Bishop ("Borrower").

### BACKGROUND

The Company has loaned Borrower the aggregate principal sum of $548,244, which is evidenced by a Non-Recourse Secured Promissory Note of even date herewith (the "Note"). As a condition to the making of the loan evidenced by the Note, the Company has required that the Note be secured by certain shares of the Common Stock of the Company held by Borrower upon the terms herein provided.

**NOW, THEREFORE,** in consideration of the foregoing and the further promises contained herein, Borrower and the Company agree as follows:

1. **Grant of Security Interest**. To secure full payment and performance of Borrower's obligations under the Note and each and every obligation of Borrower under this Agreement (collectively the "Obligations"), Borrower hereby pledges the Collateral (defined below in Section 2), and grants a security interest in the Collateral, to the Company.

2. **Collateral**. "Collateral" means 618,347 shares of Common Stock of the Company (the "Pledged Stock") duly registered in the name of Borrower, together with all property rights as may derive from or accrue to the same, including without limitation, additional shares (whether as a result of stock splits, stock dividends or otherwise) or replacement securities representing interests in the Company or an affiliate or successor in interest of the Company, and all dividends (whether in cash, stock or other forms) and other income or proceeds derived therefrom or receivable or received on the sale, exchange, collection or other disposition thereof, whether voluntary or involuntary, and distributions with respect thereto. For purposes of this Agreement, the term "proceeds" includes whatever is receivable or received when Collateral or proceeds is sold, collected, exchanged, or otherwise disposed of, whether such disposition is voluntary or involuntary.

3. **Delivery of Collateral**. On or prior to the execution of this Agreement, Borrower has delivered or will deliver to the Company (a) the stock certificate or stock certificates representing all of the Pledged Stock; and (b) a stock power or stock powers with regard to all of the Pledged Stock duly executed in blank by Borrower to the Company, which Company shall hold for purposes of perfecting its security interest hereunder and in accordance with the terms of this Agreement.

4. **Stock Adjustments**. The Company shall have the right to collect and hold any shares of stock or securities of any class or kind distributed on account of the Pledged Stock by reason of any stock dividend, distribution, reclassification or other change in the capital structure of the Company, all of which shall be delivered by Borrower to the Company and held by the Company in accordance with the terms of this Agreement.

5. **Covenants of Borrower**. In addition to other covenants of Borrower contained in this Agreement, Borrower shall:

(a) from time to time promptly execute and deliver to the Company all such stock powers, assignments, financing statements and other instruments or documents as may be necessary in order to more fully evidence and perfect the security interest of the Company in the Collateral and promptly furnish the Company with any information or writings which the Company may reasonably request concerning the Collateral;

(b) pay promptly when due all taxes, assessments, charges, encumbrances and liens now or hereafter imposed upon or affecting any of the Collateral;

(c) appear in and defend any action or proceeding which may affect its title to, or the Company's security interest in, the Collateral; and

(d) keep the Collateral free of all levies and security interests or other liens or charges except those approved in writing by the Company.

6. **Borrower's Rights in Collateral.**

(a) The parties agree that the grant of a security interest in, and the assignment and pledge of, the Collateral to the Company hereunder is intended solely for the purpose of securing the Obligations. Accordingly, prior to the occurrence of an Event of Default (as that term is defined in Section 11 hereof) and the exercise of rights and remedies afforded the Company as a result of such Event of Default, and to the extent not inconsistent with the terms of this Agreement or the Note, Borrower will be entitled to exercise rights as the owner of the Pledged Stock and will be entitled to exercise any other rights appurtenant to the ownership of the Collateral, but not including the right, without the Company's prior written consent (which may be granted or withheld by the Company's Board of Directors), to sell or transfer the Collateral. The Company, in its sole discretion, may terminate and revoke the rights of Borrower described in the preceding sentence upon any Event of Default hereunder or under the Note. Notwithstanding anything to the contrary contained herein, Borrower shall be entitled, prior to the occurrence of an Event of Default (as that term is defined in Section 11 hereof), to:

(i) sell any or all of the Collateral for cash without the consent of the Company in one or more bona fide sales to one or more bona fide purchasers, provided that (1) such purchasers are not Family Members nor Restricted Competitors (in each case as defined in that certain Second Amended and Restated Right of First Refusal and Co-Sale Agreement, dated September [8], 2014, among the Borrower, the Company and certain other stockholders of the Company (the "Right of First Refusal and Co-Sale Agreement"), (2) for so long as any amounts shall remain outstanding pursuant to the Note, any proceeds received by Borrower from such sale shall be received in trust for the Company, (3) Borrower shall, immediately upon Borrower's receipt of proceeds from any such sale, utilize and apply such proceeds to pay or prepay (in full, if sufficient proceeds shall be available) any amounts then outstanding pursuant to the Note, and (4) any such sale is completed in compliance with the terms of the Right of First Refusal and Co-Sale Agreement; and/or

(ii) transfer, not for value, any or all of the Collateral without the consent of the Company in one or more transfers to one or more Family Members (as defined in the Right of First Refusal and Co-Sale Agreement), provided that (1) for so long as any amounts shall remain outstanding pursuant to the Note, the Collateral so transferred shall continue to be pledged to the Company to secure the Obligations pursuant to the terms of this Agreement, (2) such Family Member transferee shall agree in writing that such Family Member transferee shall be bound by this Agreement and the Collateral so transferred shall continue to be pledged hereunder for so long as any amounts shall remain outstanding pursuant to the Note, (3) such Family Member transferee shall deliver to the Company (a) the stock certificate or stock certificates representing such Collateral and (b) a stock power or stock powers with regard to such Collateral duly executed in blank by such Family Member to the Company, which Company shall hold for purposes of perfecting its security interest hereunder and in accordance with the terms of this Agreement;  and (4) any such transfer is completed in compliance with the terms of the Right of First Refusal and Co-Sale Agreement.

The Company shall cooperate with Borrower to facilitate such sale or transfer of the Collateral subject to the foregoing requirements.  Prior to the occurrence of an Event of Default, Borrower will have the sole and absolute right to exercise any voting rights in respect of the Collateral as a shareholder of the Company.

(b) After an Event of Default, all rights of Borrower to exercise the voting rights which he would otherwise be entitled to exercise pursuant to this Section 6 will cease.

(c) For so long as any amounts shall remain outstanding pursuant to the Note, Borrower will hold in trust for the Company any cash distributions or allocations in respect of the Collateral ("Distributions"), free and clear of all liens and claims whatsoever other than the security interest of the Company.

7. **Representations and Warranties**.  Borrower represents and warrants to the Company that:

(a) the execution, delivery and performance of this Agreement does not conflict with any law or any agreement or undertaking to which Borrower is a party or by which Borrower is bound; and

(b) except for the rights of Borrower and the Company, no other person has or will have any right, title, claim or interest (by way of security interest or other lien or charge or otherwise) in, against or to all or any part of the Collateral.

8. **Rights of the Company.**

(a) The Company, upon ten days written notice to Borrower if Borrower fails to perform any of its obligations hereunder, may, but need not, perform such acts to preserve its rights and the value of the Collateral. Borrower hereby irrevocably appoints the Company as Borrower's attorney-in-fact (which appointment is coupled with an interest and, therefore, irrevocable) to do any such act, and to exercise such rights and powers as Borrower might exercise with respect to the Collateral in connection therewith. No failure to so act by the Company will relieve Borrower of Borrower's duties under this Agreement or in any way impair

or discharge the obligations, and no such failure to act will result in any liability to Borrower or any third party on the part of the Company.

(b) The Company does not assume any of the obligations or liabilities of Borrower arising under any of the Collateral or any agreement in respect thereto.

(c) The Company will have the right to reimbursement upon five (5) business days written demand for any and all reasonable costs and expenses, including reasonable attorneys' fees, incurred in connection with the custody, preservation and use of the Collateral and the exercise of the Company's rights hereunder, all of which costs and expenses are included in the Obligations secured by the Collateral.

(d) The Company may do any other act which, in its discretion, it deems necessary or appropriate in connection with the preservation of the Collateral and the Company's rights therein.

9. **Care of Collateral.**

(a) The Company will use reasonable care in the custody and preservation of the Collateral in its possession. The parties further agree that such care as the Company gives to the safekeeping of its own property of like kind will constitute reasonable care of the Collateral when in the Company's possession; provided, however, that the Company will not be required to make any presentment, demand or protest, or give any notice and need not take any action to preserve any rights any prior party or any other person in connection with the Obligations or with respect to the Collateral.

(b) The Company will not be responsible for or have any liability for the form, legal sufficiency, genuineness, or legal effect of any signature, description, guaranty, instruction, or document related to the Collateral.

(c) Borrower agrees that the Company will not in any way or manner be liable or responsible for any diminution in the value of the Collateral resulting from the sale or other disposition of the Collateral at Borrower's request, or from the failure of the Company to sell or consent to the sale, liquidation, reinvestment or other disposition of the Collateral, or for any act or default by any bailee, forwarding agency, transfer agent or any person whomsoever, in connection with the Collateral.

10. **Release of Collateral.** . Upon payment in full or cancellation of all indebtedness secured hereunder, the security interests created by this Agreement shall terminate and all of the Pledged Stock, together with any additional Collateral that may hereafter be pledged and deposited hereunder, shall be released from this pledge and returned to the Borrower within five (5) business days after such payment or cancellation. In addition, the Company shall promptly execute and deliver to Borrower such documents and instruments reasonably requested by Borrower as shall be necessary to evidence termination of the pledge and all such security interests given by Borrower to the Company hereunder.

In addition to the foregoing, the parties acknowledge and agree that payment of Borrower's obligations under the Note may be made through the release of certain shares of Pledged Stock to

[Signature Page to Stock Pledge Agreement]

pa-1440603

the Company in the sole discretion and upon the direction of Borrower in accordance with the terms of the Note and under no circumstances shall any shares of Pledged Stock be released to the Borrower if previously applied to the payment of the Note. The parties further acknowledge and agree that Pledged Shares may be released to purchasers in connection with the sale of such shares in accordance with and subject to the requirements of Section 6(a) hereof.

11. **Default**. An "Event of Default" will have occurred if:

(a) There is an occurrence of an Event of Default under the Note; or

(b) Borrower breaches any provision of this Agreement, and such breach continues for a period of five (5) business days after written notice from the Company.

12. **Remedies.**

(a) Upon the occurrence of an Event of Default, as defined in Section 11 above, the Company may, at the Company's option:

(i) exercise with respect to the Collateral all of the remedies of the Company under Article 9 of the California Commercial Code (the "Code"). Without limiting the foregoing and subject to subsection (e) below, the Company shall have the right to sell or otherwise dispose of the Collateral in accordance with the provisions of the Code. At any such sale, the Company shall have the right to purchase all or any part of the Collateral and may credit bid amounts owing under the Note. In view of the fact that federal and state securities laws may impose certain restrictions on the method by which a sale of the Pledged Stock and any other Collateral consisting of securities may be effected, Borrower agrees that upon the occurrence of an Event of Default, the Company may from time to time attempt to sell all or any part of the Pledged Stock and any other Collateral consisting of securities by means of a private placement restricting the prospective purchasers to those who satisfy the requirements for available exemptions under applicable securities laws. In so doing, the Company may solicit offers to buy the Pledged Stock and any other Collateral consisting of securities from a limited number of investors deemed by the Company to satisfy those standards. The acceptance by the Company of the highest offer(s) obtained therefrom shall be deemed to be a commercially reasonable method of disposition of the Pledged Stock and any other Collateral consisting of securities. Borrower further agrees that, to the extent notice of sale shall be required by law, ten days' prior notice to Borrower shall constitute reasonable notice. The Company shall not be obligated to proceed with any sale of Collateral regardless of notice of sale having been given. Nothing herein shall be deemed to limit or restrict the Company in disposing of the Collateral in other commercially reasonable ways;

(ii) exercise any and all remedies against the Collateral available under law or in equity; and

(iii) recover from Borrower all costs and expenses, including reasonable attorneys' fees, incurred by the Company in exercising any right or remedy provided for hereunder or by law, which costs and expenses are included in the Obligations secured by the Collateral.

(b)     No delay or omission to exercise any right or remedy of the Company upon a default by Borrower will waive any right or remedy of the Company or be construed as a waiver of any similar default which occurs later.  Borrower waives any right to require the Company to proceed against any other person or to exhaust any Collateral or to pursue any other remedy in the Company's power.

(c)     It is the intention of the parties that the grant of the security interest and assignment and pledge of the Collateral to the Company, and the exercise by the Company of any right or remedy granted in this Agreement, is in addition to all other security interests and remedies given to the Company by virtue of any statute or rule of law or any other agreement, all of which security interests and remedies are cumulative and, to the maximum extent permitted by applicable law, may be exercised successively and concurrently without impairing the rights and remedies of the Company under this Agreement.

(d)     In any sale of Collateral which is subject to restrictions imposed by state and federal securities laws, the Company shall obtain the investment representation statements customarily obtained in a sale of that type from the purchasers of the Collateral.

(e)     Any proceeds realized from the disposition of the Collateral pursuant to the foregoing power of sale shall be applied first to the payment of reasonable expenses incurred by the Company in connection with the disposition, then to the payment of any amounts outstanding pursuant to the Note and finally to any other Obligations secured hereunder.  Any surplus proceeds shall be paid over to the Borrower.

13.     **Miscellaneous.**

(a)     <u>Successors</u>.  The terms of this Agreement will inure to the benefit of and bind the parties hereto and their respective successors, assigns, executors, heirs and legal representatives.

(b)     <u>Entire Agreement; Severability</u>.  This Agreement contains the entire pledge agreement between the Company and Borrower with respect to the Pledged Stock and the Collateral and may be modified only by a writing signed by the Company and Borrower.  If any of the provisions of this Agreement are held invalid or unenforceable, this Agreement will be construed as if not containing the invalid or unenforceable provisions.

(c)     <u>Choice of Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of California, excluding its conflict of laws rules to the extent such rules would apply the law of another jurisdiction.

(d)     <u>Notices</u>.  All notices, requests, demands and other communications to be given pursuant to the terms of this Agreement shall be in writing and shall be deemed effectively given upon personal delivery or upon deposit in the United States mail by certified mail (if the parties are within the United States) or upon deposit for delivery by a recognized express mail courier service (for international delivery of notice), with postage and fees prepaid, addressed to the other party at its address as shown below, or to such other address as such party may designate in writing from time to time to the other party.

[Signature Page to Stock Pledge Agreement]

pa-1440603

If to the Company:

Verengo, Inc.
20285 S. Western Avenue, Suite 200
Torrance, CA 90501
Fax: (714) 210-3908
Attn: Anders Dhal

If to Borrower:

Randy Bishop
4670 White Oak Ave
Encino, CA  91316

(e)  Time.  Time is of the essence of each and every provision of this Agreement.

(f)  Counterparts.  This Agreement may be executed by facsimile and in any number of counterparts, and when so executed shall have the same force and effect as though all signatures appeared on one document.

**IN WITNESS WHEREOF,** the parties have executed this Stock Pledge Agreement as of the date and year first above written.

Verengo, Inc.

By: /s/ Anders Dahl
Name: Anders Dahl
Title: Chief Executive Officer


/s/ Randy Bishop
Name: Randy Bishop

# STOCK POWER

## ASSIGNMENT SEPARATE FROM STOCK CERTIFICATE

For value received, the undersigned hereby assigns all right, title and interest in _____ shares of Common Stock of Verengo, Inc., a Delaware corporation, (the "Company"), represented by Stock Certificate Number \_\_\_ to _____, and does hereby irrevocably constitute and appoint the Secretary of the Company to transfer the said shares on the share register of the within-named corporation with full power of substitution in the premises.

Executed this \_\_\_\_ day of _____, 20\_\_\_.

_____
Ken Button

pa-1659332